UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WACO COLLINS, JR #350214                    CIVIL ACTION NO. 19-cv-584 SEC P

VERSUS                                      JUDGE ELIZABETH E. FOOTE

DARREL VANNOY                               MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Waco Collins ("Petitioner") was arrested after a complex, undercover drug operation. After being advised of his <u>Miranda</u> rights, Petitioner confessed to the police about his drug business and surrendered his remaining supply of cocaine. Petitioner was charged with drug crimes in the Caddo Parish court. Attorney J. Ransdell Keene enrolled as counsel for Petitioner to defend the drug charges. Several weeks later, Keene also enrolled in a separate Caddo Parish case to defend Petitioner against second-degree murder charges in connection with the death of Shannon Golston.

The State proceeded toward a jury trial set for September 25, 2012 on the drug charges, which carried maximum penalties on distribution and possession charges of 30 years each, with a maximum on a conspiracy charge of 15 years. Sentences are usually ordered to run concurrently, but there was the potential for the three sentences to run consecutively, for a total of 75 years. More dauting was that Petitioner, if convicted of a drug crime, faced the prospect of a multiple offender enhancement that, given his criminal history, would mandate a natural life sentence.

On the day of trial, Petitioner pleaded guilty to all three drug counts. The DA agreed to forgo seeking a multiple offender enhancement but retained the discretion to be the "sole arbiter" of deciding whether to seek one later. Petitioner gave interviews to a detective that were helpful in some criminal investigations, but the State nonetheless sought and obtained a multiple offender enhancement and a natural life sentence. The State said that it did so because it believed that, although Petitioner provided information about crimes committed by others, he was less than forthcoming about his personal responsibility for some crimes.

Petitioner filed a post-conviction application in state court and pursued claims related to his plea agreement. He now seeks federal habeas corpus relief on the grounds that (1) the State offered a detective's hearsay and opinion testimony at the post-conviction evidentiary hearing that should not have been admitted, (2) the State breached its plea agreement, and (3) Petitioner received ineffective assistance of counsel during his plea negotiations. For the reasons that follow, it is recommended that the petition be denied.

**Relevant Facts**

Petitioner was charged with the three drug felonies in March 2012, and in June 2012 he was charged with the second-degree murder of Shannon Golston. Attorney Keene, who represented Petitioner in both matters, sought to reach a plea deal to resolve the drug case prior to its September 2012 trial setting. He wrote a letter to Petitioner dated July 31, 2012 that stated:

> "With reference to the drug case, it is scheduled to go to trial next week. [A.D.A.] Jason Brown will not agree to a sentence, but if you plead guilty he will not multi-bill you and will delay your sentencing to allow you to cooperate. If you cooperate, you will have to tell what you know about the homicide. Otherwise, we will go to trial." Tr. 425.

Mr. Keene wrote the prosecutors again on September 14, 2012 and stated that "there was an agreement in place for the State (including a representative from your office) to interview, debrief, etc. Mr. Waco Collins as to his knowledge of criminal activities in the area."  Keene added: "His assistance, if given and useful, would gain him sentencing, etc. consideration."  Tr. 424.  Several days later, on September 25, 2012, Petitioner and Keene appeared before Judge Craig Marcotte on what had been scheduled as  the trial date.  A plea agreement was announced (Tr. 193.002-003) to the court as follows:

> ADA Brown:  The agreement would be there would be no agreement with the State as to sentence. His sentencing would be by the Court. A PSI would be ordered. And he is still facing the Habitual Offender Bill. And the **DA's office will be the sole arbiter of making the decision as to whether or not to proceed with the Habitual Offender Bill** and to what extent at a later time after the PSI is in. And this has no bearing on any other cases that Mr. Collins may be facing; it's only dealing with the matters before the Court today on this one case.
>
> I'll defer to defense counsel if that's the agreement.
>
> Defense:  The Court is aware of some conversation that we have delivered to the Court privately that I do not elect to put on the record right now. PSI is going to be ordered. I think we'll place the case back on the calendar for December, but it may be delayed beyond that beyond on other events that may occur.
>
> Court:  I understand. All right.

The court began the <u>Boykin</u> colloquy and discussed the maximum penalties.  When the judge mentioned the prospect of a multiple offender enhancement, the following exchange (Tr. 193.005) took place:

| Court: | You understand that by pleading guilty straight up like this, the State could Multi Bill you if they (sic) so chose? |
| --- | --- |
| Petitioner: | I was under the impression – |
| Mr. Keene: | That goes to the other conversation. |
| Court: | Correct. They could do that. There is a possibility of that, depending on meetings with them. Do you understand what I'm saying? Do you understand, Mr. Collins? |
| Petitioner: | Yes, sir. |
| Court: | Any questions about that? |
| Petitioner: | No. |

Later, the court cautioned Petitioner that if he were convicted of another felony he could be multi-billed based on the convictions and, "in addition to the fact that the Multi Bill is not off the table on this deal as well." The judge asked Petitioner if he understood that, and Petitioner answered, "Yes, sir," and he said that he had a chance to discuss it with his attorney and had no questions for his attorney. Tr. 193.007. Petitioner's plea was accepted.

As discussed in more detail below, Petitioner then met with Detective Rod Demery and provided information about criminal activity. Nonetheless, in February 2013, the State charged Petitioner as a fourth felony habitual offender. Tr. 194. Petitioner, represented by Keene, challenged the bill on procedural grounds, but he did not argue that it violated the plea bargain. Petitioner was adjudicated a fourth felony offender and given concurrent life sentences on each of the three drug convictions. Tr. 265-68. The multiple offender

adjudication and sentences were affirmed on appeal. State v. Collins, 136 So.3d 912 (La. App. 2d Cir. 2014), writ denied, 152 So.3d 150 (La.).

Petitioner filed a pro se post-conviction application in state court. He argued that (1) the State reneged on the plea bargain when it filed a multiple offender bill and (2) counsel rendered ineffective assistance because Petitioner was led to believe that he would not be multi-billed and would receive a 15-year sentence. Tr. 403-21.

Petitioner supported his application with the letters from Mr. Keene quoted above, plus three others that were written after the plea was entered. The first of those three, dated December 11, 2012 (Tr. 426), stated:

> I have met with Det. Demery and in large part, he believes you and we are scheduling more debriefings. The sentencing scheduled for Thursday will be moved.

The next letter (Tr. 427) was dated March 18, 2013 and stated:

> It seems that Det. Demery has told the prosecutors that you are holding back on him. He tells them that you deny information that is provable through other sources. As an example, they say you know where the "murder weapons are in the Anthony Crane homicide." Do you? If you are holding back, you must tell me.

The third letter (Tr. 428) is dated May 16, 2014 and is in response to some letters from Petitioner. Keene wrote, in relevant part, as follows:

> The first letter [from Petitioner] is postmarked May 9, 2014 and is one page in length. In the letter you write that the State reneged on a deal. There was no deal with respect to the drug case other than to give you sentencing consideration at their discretion. At the Bench I informed Judge Marcotte of your cooperation. Speaking for the State, Mr. Blewer disagreed saying that you knew more than you had told. Accordingly, there was no breach of a deal and the State then filed the multi-bill which we fought and are still fighting [on procedural grounds].

Judge Charles Tutt presided over the post-conviction proceeding. He ordered an evidentiary hearing to clarify "whether there was a deal and what it entailed," and to explore what Petitioner may have been about to say at the guilty plea hearing when he said he "was under the impression …" before he was interrupted. Tr. 437-39. The hearing took place in July 2017, with Collins represented by attorneys David Williams and Sandra Williams.

The state began the hearing by summarizing other investigations that were underway at the time Petitioner entered his plea. The background information was offered as examples of the type of information that would have been sought from Petitioner during debriefing. The crimes under investigation involved an armed robbery and attempted murder of a drug dealer in Dallas. Authorities believed that the men responsible were Shannon Golston and Gerald Needham, who were sent by Petitioner. Another investigation concerned a home invasion armed robbery murder, in which Golston and Needham were also believed to be involved. Golston himself was later murdered, Timothy Thomas was convicted of involvement in the murder, and there was evidence that Petitioner committed the murder. Petitioner was also believed to be responsible for the murder of Anthony Crane. The State also said that a person who Petitioner sent to Houston for a drug shipment turned to police and became a CI because he feared for his life. Tr. 452-55.

ADA Jason Brown, who handled the drug crimes prosecution and sought the multiple offender enhancement, testified at the evidentiary hearing. He said that he considered Petitioner "the most violent and dangerous person in Caddo Parish at the time."

He believed that Petitioner was involved in many crimes, including homicides in multiple jurisdictions.  Brown believed that he had a very strong case on the drug charges, and it was his intention to obtain convictions and then seek a multiple offender enhancement for life sentences.  He said that this was "probably one of the strongest cases I've ever dealt with evidence-wise, and I felt very confident" that there would be a conviction.  Brown did not make any plea offers.

Brown testified that Mr. Keene approached him with the offer of a guilty plea and cooperation.  Brown said that he responded that if Petitioner wanted to plead guilty, "that would be up to him, with no deal with the State."  Brown said that he did not recall being present for any of the post-plea interviews with Petitioner, but he was advised that the information obtained "wasn't anything that helped us with the investigation that provided prosecutable information other than exculpating himself, I believe."  Brown repeated his statements from the plea hearing that there was no agreement as to the sentence, and the State would be the "sole arbiter" of whether a multiple offender enhancement was sought. Tr. 456-70.

Detective Rodney Demery (Tr. 470-89) also testified at the hearing.  He was a Shreveport Police Department detective when he interviewed Petitioner three or four times. He knew that attorney Keene had made Petitioner available, but he did not know the terms of any agreement with the prosecutor.  Each session lasted a couple of hours.  There were several people present for one interview, but there were "a couple of times" when it was just Petitioner and Demery.  The detective was asked if it was his impression that Petitioner cooperated with him.  He answered:

> Yeah, I would say Mr. Collins answered most questions I asked. There were a couple of occasions that he was suspected of being involved in he didn't say a lot about that, but all the other information he was very cooperative.

Demery was asked about particular matters that Petitioner may have helped resolve. He noted two homicide cases from 2009, plus a shooting in Dallas on which Petitioner gave him "some pretty valuable information," and a Houston cocaine ring that was "a pretty big deal."

When questioned by the State, Demery went into detail about those criminal investigations, which involved Gerald Needham, aka Copperhead, and Shannon Golston, aka Strongman. Detective Demery opined that Timothy Thomas and Petitioner killed Golston. Thomas confessed and implicated Petitioner, but Petitioner denied his involvement.[1] Demery also believed that Petitioner was involved in the murder of Anthony Crane, but Petitioner denied involvement in that crime as well.

Detective Demery testified that when Petitioner denied involvement in the Golston and Crane murders, Demery believed that to be false and represented not cooperating with

---

[1] The appellate decision from Thomas's case states that "Waco Collins traveled from Shreveport, Louisiana, to Dallas, Texas, to purchase several kilograms of cocaine from a drug dealer. A dispute about the price arose during the transaction, with the dealer demanding several thousand dollars more than the originally agreed-upon price. Instead of paying the higher price, Collins had two of his associates, Gerald Needham and Shannon Golston, rob the dealer and abscond with the drugs. Upon returning to Shreveport, Collins got into a disagreement with Golston over the drugs, and Golston threatened to kidnap and kill Collins. At some point after the disagreement, Collins borrowed a Glock pistol from [Thomas]." Thomas drove Collins to Golston's apartment, where Collins put a trash bag over his head, entered Golston's apartment, and "shot him from behind in his right shoulder and in the head, killing him." State v. Thomas, 223 So. 3d 759 (La. App. 2 Cir. 2017), writ denied, 237 So. 3d 523 (La. 2018). At the post-conviction hearing, Petitioner said Golston had been his "best friend."

respect to those two homicides. Petitioner's counsel asked if Petitioner, outside those two homicides, otherwise cooperated. Demery answered, "Absolutely." He added:

> My opinion is, Collins gave me information when I asked him information. There were certain areas that Collins did not give me information in. Now, I don't know how you want to make that or explain that, but that's what it was.

Attorney Keene, who previously served as a United States Attorney and has more than 30 years' experience in private practice, testified that the plea agreement discussions were initiated when Petitioner contacted him and said he had knowledge about drug dealing and homicides that he would like to offer. Keene then contacted the State, and they reached an agreement that Petitioner would give "truthful statements," and the State would consider those statements to determine whether or not Petitioner had told the truth and given helpful information. The State would then determine whether to proceed on the multi-bill. There was no written agreement, but this oral agreement was transmitted to Petitioner.

Keene testified that he was present in one interview of Petitioner that was conducted in the Caddo grand jury room, where multiple law enforcement agencies were present. Keene was not present during the other interviews. He was familiar with the Golston murder, but he did not know much about the other homicides that were looked into.

Keene was asked about his statement at the guilty plea hearing that the court was aware of "some conversation that we had delivered to the Court privately" that he did not want to put on the record. Keene explained that the gist of those off-the-record conversations was that Petitioner was going to cooperate and try to give the State information, and the State would consider whether the information was truthful and give

him sentencing consideration.  Keene said that the conversations with the court would probably have been at sidebar, without Petitioner present.  Keene explained that the drug court is "full of drug offenders," and it was not in the interest of Petitioner's safety to state in open court that Petitioner "was going to snitch on them."

Keene agreed with the prosecution that the evidence of guilt of the drug crimes was overwhelming.  The only defense he could perceive was a possible entrapment defense (which would have been quite unlikely to succeed based on the evidence of record).  Keene was asked to read his several letters (quoted above), which he did.  He was asked if it was his understanding of the plea agreement that it was "paramount" that Petitioner tell the truth, and the prosecutor was the "sole arbiter about whether he was truthful."  Keene agreed.  He said that Detective Demery told him that he had solved homicides as a result of Petitioner's information, so Keene was surprised when the prosecutor later stated that Petitioner was not truthful.

The court asked Mr. Keene about the part of the guilty plea hearing where Petitioner began to say that he was "under the impression" of something before Keene interrupted and said, "That goes to the other conversation."  Keene explained that the other conversation he referenced was when he and the prosecutor "explained to Judge Marcotte that we were not going to go for an immediate sentencing or an immediate multi-bill, that Mr. Collins was going to cooperate and the State would then consider the degree of his cooperation."  Keene said he referred to the conversation vaguely in open court, out of concern for the safety of his client.

Petitioner testified (Tr. 521-51) that when he said at the guilty plea that he was "under the impression," he meant, "I was under the impression if I cooperated, I would not get multi-billed." He said Keene told him that the State wanted to know about the Shannon Golston murder, he provided information about it, and the case was solved. Petitioner said that he met with Detective Demery at least four times, and he claims that he answered his questions truthfully. Petitioner's attorney described how the prosecutor said that Petitioner did not tell all that he knew, which "was the only thing required to undo all the cooperation you did." Counsel asked Petitioner if he would have pled guilty if he understood that at the plea, and Petitioner answered, "No, sir."

The prosecutor cross-examined Petitioner extensively about his connection to Shannon Golston and multiple other persons who were convicted of murder, suspected of being murderers, murder victims, or involved in drug dealing. The State argued that Petitioner's answers showed that he was attempting to minimize his role as a leader who had directed much of those activities. Petitioner admitted that he was asked about the murders of Shannon Golston and Anthony Crane, and he had denied involvement in either crime.

Judge Tutt issued an oral ruling on the post-conviction application. His findings included the following:

> I think Mr. Collins knew that he had an obligation to cooperate. I think that Detective Demery, while saying that there was cooperation because they closed some cases, but when it got down to cases in which Mr. Collins may have been involved, then he kind of clammed up.

The court noted that Petitioner had given conflicting statements about the reason for Golston's trip to Dallas. The court continued:

> All of my questions about the guilty plea have been answered in the testimony of Mr. Keene and Mr. Collins. Mr. Collins had a duty to tell the truth, I don't think he had any reasonable anticipation that it would be up to him to decide whether he told the truth, but that it would be up to the District Attorney's Office when he pled guilty. And the District Attorney's Office decided he was not telling the whole truth, so they decided that they would go ahead with the multi-bill. So I'm going to reject the post-conviction relief sought by Mr. Collins.

Petitioner, represented by counsel, filed a writ application. The state appellate court stated, "This writ is denied on the showing made" and cited La. C.Cr.P. art 930.2, which places the burden of proof on the applicant. Tr. 888. Petitioner then applied to the Supreme Court of Louisiana, which denied his application in a per curiam that stated Petitioner "fails to show that he was denied the effective assistance of counsel during plea negotiations under the standard of Strickland" and, as to his remaining claims, "fails to satisfy his post-conviction burden of proof" under Article 930.2. Justice Hughes voted to grant the writ. Chief Justice Johnson also voted to grant the writ, and she assigned reasons. She concluded that the State breached its agreement, so Petitioner should no longer be bound by his obligations, including his agreement to plead guilty. Tr. 1163-68.

**Evidence Admitted at the Post-Conviction Hearing**

Petitioner was self-represented when he filed his federal habeas petition. Ground one of the petition is a single sentence that asks whether alleged hearsay and opinion testimony by Detective Demery regarding other crimes was admissible at the post-conviction evidentiary hearing. The petition set forth no argument on the claim, but it did

refer to the supporting memorandum.  There is, however, nothing in the memorandum that addresses this claim.  Counsel later enrolled for Petitioner in this case and asked to re-brief the breached plea bargain claim and add an ineffective assistance of counsel claim. Counsel did so in an amended petition (Doc. 21), but this evidence claim was not mentioned.

The State argues that this claim is unexhausted, abandoned due to failure to brief it, and lacking in merit.  The court need not address the exhaustion argument because the other two reasons are adequate to deny this claim.  First, the failure to brief this claim warrants denying it as waived or abandoned.  Lookingbill v. Cockrell, 293 F.3d 256, 263 (5th Cir. 2002) ("Where a habeas petitioner fails to brief an argument adequately, we consider it waived."); Pea v. Cain, 2017 WL 1197872, *12 (M. D. La. 2017) (collecting district court decisions that found waiver where a habeas claim was not adequately briefed).

The claim also lacks merit because complaints about the admission of evidence in a state post-conviction hearing do not constitute grounds for habeas relief.  Habeas corpus relief is available only for violations of federal law, and the Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law."  Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).  In particular, "infirmities in State habeas proceedings do not constitute grounds for relief in federal court."  Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001).  No relief is permitted on this claim.

**Breach of Plea Agreement**

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a

promise must be fulfilled." Santobello v. New York, 92 S.Ct. 495, 499 (1971). Petitioner's federal habeas counsel, in an amended petition (Doc. 21), re-briefed his claim asserted in the original petition that the State breached its plea agreement when it filed a multiple offender bill in spite of Petitioner's "substantial compliance" with the plea agreement. The State responds that the claim is barred due to lack of exhaustion of state court remedies and a resulting procedural bar. The court need not address those issues because the claim lacks merit.[2]

When a habeas petitioner claims a breach of a plea bargain with the State, he bears the burden of proving (1) exactly what the terms of the alleged promises were, (2) exactly when, where, and by whom such a promise was made, and (3) the precise identity of any eyewitnesses to the promise. Bonvillian v. Blackburn, 780 F.2d 1248, 1250-51 (5th Cir. 1986), citing Blackledge v. Allison, 97 S.Ct. 1621, 1630 (1977). A petitioner who presents such a claim usually is met with his own contrary statements made at his plea hearing. The Court held in Blackledge that "the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Id. at 1629. Declarations made at the hearing carry a "strong presumption of verity" and mere conclusory allegations or wholly incredible claims are subject to summary dismissal. Id.

---

[2] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). And the court need not decide a procedural bar issue if it instead chooses to deny the claim on the merits. King v. Davis, 883 F.3d 577, 585 (5th Cir. 2018); Glover v. Hargett, 56 F.3d 682, 684 n.1 (5th Cir. 1995).

The record includes not only the guilty plea transcript but also the record of the evidentiary hearing and Judge Tutt's findings of fact made when he denied this claim on the merits.    Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts.  Williams v. Taylor, 120 S.Ct. 1495, 1519-20 (2000).  A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable.  Renico v. Lett, 130 S.Ct. 1855, 1862 (2010).  When a state court has denied a claim on the merits, Section 2254(d) bars habeas relief unless the prisoner shows that the state court "erred so transparently that no fairminded jurist could agree with that court's decision."  Bobby v. Dixon, 132 S.Ct. 26, 27 (2011) (per curiam).

Petitioner argues that the trial court's determination that a plea agreement existed is entitled to deference by this court, but he argues that the state court unreasonably applied clearly established federal law when it held that his denial of involvement in two pending

homicides constituted a breach of his agreement. In addition to the habeas burdens discussed above, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Judge Tutt made specific findings of fact, after hearing from all relevant witnesses in a live hearing, regarding this claim. He found that there was an agreement under which Petitioner would plead guilty and offer his cooperation, and it was within the sole discretion of the prosecutor to determine whether that cooperation warranted forgoing a multiple offender bill. The court did not, as Petitioner argues, hold that Petitioner breached his end of the agreement. Rather, the court held that there was no breach by any party because the State was not committed to doing anything with respect to sentencing and retained complete discretion on that issue.

A similar situation arises in federal court when the parties enter a plea bargain that calls for the defendant's post-plea cooperation, and the terms of the plea bargain give the prosecutor complete discretion as to whether to request a sentence reduction based on Section 5K1.1 of the sentencing guidelines. If a defendant enters such a plea bargain, he cannot later overturn his guilty plea if the prosecutor ultimately decides not to request the reduction. See, e.g., U.S. v. Barnes, 730 F.3d 456 (5th Cir. 2013).

Petitioner argues that the plea agreement was not much of a bargain for him, calling for his guilty plea to all three counts, and especially after the prosecutor elected to pursue a multiple offender bill. But the record shows that Petitioner faced overwhelming evidence of guilt, through witnesses and video surveillance, a prosecutor bent on obtaining a life

sentence, and the defendant with nothing else to offer.  At Petitioner's request, counsel obtained perhaps the only plea agreement possible in that setting.  Petitioner testified at the evidentiary hearing that all of the evidence against him could have been "thrown out under fruit of a poisonous tree" if his lawyer had listened to him and filed a motion to suppress, but the record does not indicate that there was a good faith basis for any such motion.

The case bears similarity to Scrivens v. Henderson, 525 F.2d 1263 (5th Cir. 1976), where a habeas petitioner argued that his plea bargain had been breached when the prosecutor pursued a multiple offender enhancement.  His habeas claim was denied because he was aware, before entering his plea, that his sentence could be increased as a multiple offender.  The petitioner testified that the plea agreement included a provision that he would not be sentenced as a multiple offender, but his attorney, the prosecutor, and an assistant prosecutor testified that there was no such bargain.  That testimony and other evidence of the absence of such a bargain doomed the claim because plea bargaining "must have explicit expression and reliance and is measured by objective, not subjective standards." Id. at 1267.  "[M]ere expectation or hope does not constitute plea bargaining." Id.  A similar claim was rejected in Jackson v. Andrews, 31 Fed. Appx. 833 (5th Cir. 2002).

This claim must be denied because Petitioner has not met his heavy burden of overturning the factual findings made by the state court.  He has also not demonstrated that the adjudication of this claim on the merits was an objectively unreasonable application of Santobello or other clearly established federal law.  Petitioner may have hoped for avoiding a multiple offender enhancement, but it was made abundantly clear to him that the State was the "sole arbiter" of whether he would receive that benefit.  There was no evidence to

the contrary. The state court's adjudication of this issue appears to be an entirely reasonable application of the record evidence to the applicable law. It certainly cannot be said that the state court erred so transparently that no fairminded jurist could agree with its decision. Accordingly, the state court's rejection of this claim must withstand review under the demanding requirements of Section 2254(d).

**Ineffective Assistance of Counsel**

### A. Introduction

Petitioner pursued an ineffective assistance of counsel claim in state court, but he did not include it in his original federal petition. The federal court later allowed counsel to enroll for Petitioner and argue an ineffective assistance claim in an amended petition (Doc. 24), reserving the right of the State to object to timeliness. The State defends the merits, but it also argues that the claim was not properly exhausted in state court because the version of the claim presented here differs from that presented in state court. The State also argues that the amended petition that asserted the claim does not relate back to the original federal petition, making this claim untimely. The court finds that it need not address the exhaustion or timeliness arguments because the claim lacks merit.

### B. <u>Strickland</u> and § 2254(d)

To prevail on the merits of this claim in state court, Petitioner had to establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. <u>Strickland v. Washington</u>, 104 S.Ct. 2052, 2064 (1984). To show prejudice in a guilty plea case "the defendant must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 106 S.Ct. 366, 370 (1985). The deficient performance also must have caused the outcome to be unreliable or the proceeding to be fundamentally unfair. Lockhart v. Fretwell, 113 S.Ct. 838 (1993); Armstead v. Scott, 37 F.3d 202, 206-07 (5th Cir. 1994).

The Supreme Court of Louisiana specifically found that Petitioner did not establish ineffective assistance under the Strickland standard. Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland and Hill v. Lockhart standards was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007).

The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

## C. Analysis

Petitioner argues that counsel was ineffective because he did not reduce the plea agreement to writing. Oral plea bargains are common in the busy state courts, and the

terms of the plea agreement were adequately reflected on the record at the guilty plea hearing. Such oral plea bargains are also seen in federal courts, See U.S. v. Lozano, 791 F.3d 535, 537 (5th Cir. 2015) ("Lozano entered into an oral plea agreement and pleaded guilty to Count Two of a thirteen-count indictment"), and courts have rejected claims that it is ineffective assistance to not obtain the plea agreement in writing. See, e.g., Payne v. Brown, 662 F.3d 825, 829 (7th Cir. 2011) and Castillo v. Hatch, 2007 WL 9733680, *6 (D. N.M. 2007).

Petitioner also argues that defense counsel failed to advocate for his client when he advised him to plead guilty and enter into a plea agreement that exposed him to potentially unlimited criminal liability by requiring him to discuss other crimes, including murder, without a proffer agreement, use immunity, or other protections. But there is no indication that Petitioner has been charged with any such additional crimes, and this habeas petition may address only the convictions and sentences for the drug offenses. Petitioner argues that his plea bargain was not a good one but, as discussed above, he had little room to bargain. The record does not allow granting relief on these Strickland arguments.

Petitioner testified at the hearing that he would not have entered a guilty plea had he understood the discretion wielded by the prosecutor. That testimony did not persuade the state court. The guilty plea hearing included at least two clear statements that the prosecution retained discretion regarding a multiple offender bill. After hearing that clear message, Petitioner entered his plea in the face of overwhelming evidence of guilt.

The test for whether a petitioner would have insisted on trial is an objective one and "[s]imply alleging prejudice will not suffice." Mangum v. Hargett, 67 F.3d 80, 84 (5th Cir.

1995). See also Armstead, 37 F.3d at 206. The Supreme Court has emphasized the need for a case-by-case examination of the totality of the evidence for assessing a claim of prejudice in the context of a guilty plea. Lee v. United States, 137 S.Ct. 1958, 1966 (2017). Although the Court declined to adopt an automatic rule denying prejudice claims when the defendant cannot mount a viable defense, it warned against courts "upset[ting] a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 1966-67.

The Lee holding was applied to a habeas claim in Young v. Spinner, 873 F.3d 282, 285-86 (5th Cir. 2017), where the petitioner asserted that counsel misinformed him about the sentencing range. The Court affirmed the denial of relief. Of particular relevance to a habeas claim that must overcome the burden of Section 2254(d), the Court noted, "Even if Young has a plausible argument that he would have gone to trial had he known a one-year sentence was impossible, that does not establish that the state court's contrary conclusion was unreasonable." Id. at 288.

The Strickland standard requires a showing of deficient performance and prejudice. The state court found neither, so Petitioner faces a heavy burden under Section 2254 to obtain habeas relief on the claim. He has not demonstrated, under that doubly deferential standard, that the state court's rejection of his Strickland claim was an objectively unreasonable application of the holding in that decision. Relief on this final claim must be denied.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14)

days from the date of this Report and Recommendation, file a memorandum that sets forth

arguments on whether a certificate of appealability should issue.

       THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of November,

2021.

Mark L. Hornsby
U.S. Magistrate Judge